**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

09-60344 CR-MARRA MAGISTRATE JUDGE VITUNAC



18 U.S.C. § 371
18 U.S.C. § 1341
18 U.S.C. § 1343
18 U.S.C. § 2
21 U.S.C. §§ 331(a), 333(a)(2)
21 U.S.C. §§ 331(k), 353(b)(1),  333(a)(2)

**UNITED STATES OF AMERICA**

**vs.**

**FELIX ALVAREZ,**
**EDERT ORTIZ,**
**ANTHONY HASAN, M.D., and**
**DAVID KENTON, M.D., and**
**VITALITY MEDICAL, INC.,**

      **Defendants.**

                            /

## INDICTMENT

The Grand Jury charges that:

## GENERAL ALLEGATIONS

At times material to this Indictment:

**Regulatory Framework**

1.      The United States Food and Drug Administration ("FDA") was the federal agency

charged with the responsibility of protecting the health and safety of the American public by

enforcing the Federal Food, Drug, and Cosmetic Act, Title 21, United States Code, Sections 301-397 ("FDCA"). One purpose of the FDCA was to ensure that drugs sold for use by humans were safe, effective, and bore labeling containing only true and accurate information. The FDA's responsibilities under the FDCA included regulating the manufacture, labeling, and distribution of all drugs, including prescription drugs, and drug components shipped or received in interstate commerce.

2.       Under the FDCA, the term "drug" included articles that (1) were intended to sue in the diagnosis, cure, mitigation, treatment, or prevention of disease in man; or (2) were intended to affect the structure or any function of the body of man. 21 U.S.C. § 321(g)(1)(B) and (C).

3.       Under the FDCA, a "drug" was misbranded if its labeling was "false or misleading in any particular." 21 U.S.C. § 352(a). Under the FDCA , the term label meant a display of written, printed, or graphic matter upon the immediate container of any article. 21 U.S.C. § 321(k).  The FDCA defined "labeling" as all labels and other written, printed, or graphic matter upon any article, including drugs and devices, or any of its containers or wrappers, or accompanying such article.  21 U.S.C. § 321(m).

4.       The FDCA prohibited the introduction or delivery for introduction, or causing the introduction or delivery for introduction, into interstate commerce of any drug that was misbranded. 21 U.S.C. § 331(a).

5.       Pursuant to the FDCA, some drugs intended for use by humans could be dispensed only upon the valid prescription of a practitioner licensed by law to administer such drugs.  Such drugs were known as "prescription drugs." Prescription drugs were those drugs which, because of their toxicity and other potential harmful effects, were not safe for use except under the supervision

of a practitioner licensed by law to administer such drugs. 21 U.S.C. § 353(b)(1)(A).  A drug was also a "prescription drug" if the FDA required it to be administered under the supervision of a practitioner licensed by law to administer such drug as a condition of the FDA's approval of the drug. 21 U.S.C. § 353(b)(1)(B).

6.      Under the FDCA, dispensing a prescription drug without a valid prescription by a licensed practitioner was deemed to be an act that resulted in the drug being misbranded while held for sale. 21 U.S.C. § 353(b)(1).  The FDCA prohibited doing any act that caused a drug to be misbranded while held for sale after shipment in interstate commerce. 21 U.S.C. § 331(k).

**The Defendants**

7.      Defendant **VITALITY MEDICAL, INC.** (hereinafter referred to as "Vitality") was incorporated in the State of Florida on or about July 17, 2002, and was located at 800 E. Cypress Creek Road, Suite 204, Ft. Lauderdale, Broward County, Florida.  In some advertisements, Vitality was also referred to as "Wellness and Vitality Centers, Inc."

8.      Defendant **FELIX ALVAREZ** was the owner of Vitality and was listed on its corporate records as the President, Treasurer and Secretary of Vitality.

9.      Defendant **EDERT ORTIZ** was employed at Vitality from in or about July 2001 through in or about October 2005.  Defendant **ORTIZ** was a licensed physician's assistant in the State of Florida.

10.     Defendant **ANTHONY HASAN, M.D.,** was employed as the medical director of Vitality from in or about October 2003 through on or about October 31, 2005.  Defendant **HASAN** was a licensed medical doctor in the State of Florida.

11.     Defendant **DAVID KENTON, M.D.,** was  employed to review patients' charts at

-3-

Vitality from on or about January 25, 2004, to on or about October 14, 2005. Defendant **KENTON** was a licensed medical doctor in the State of Florida.

12.     Defendants **FELIX ALVAREZ, EDERT ORTIZ, AND VITALITY** promoted and sold the product "Sublingual Sildenafil Citrate," which they also sold under the names "Instant Viagra," "Fast Acting Viagra® Soft Tabs," "Sildenafil Citrate Soft Tabs" and "Pleasure Tabs®" (hereinafter collectively referred to as "Soft Tabs"), to mitigate, treat, or cure erectile dysfunction ("ED"), premature ejaculation, penile curvature, and thicker and longer erections.  As such, the Soft Tabs were "drugs" within the meaning of the FDCA.

13.     Vitality represented to the general public through newspaper advertisements and in response to telephone calls that it was a medical center that treated erectile dysfunction.

14.     The Soft Tabs were not approved by the FDA.

## COUNT 1
### (Conspiracy: 18 U.S.C. § 371)

15.     Paragraphs 1 through 14 of the General Allegations are incorporated as though realleged in their entirety herein.

16.     From on or about July 18, 2002, and continuing through on or about at least October 25, 2005, at Broward, County, in the Southern District of Florida, and elsewhere, the defendants,

**FELIX ALVAREZ,**
**EDERT ORTIZ,**
**ANTHONY HASAN, M.D.,**
**DAVID KENTON, M.D.,**
**and**
**VITALITY MEDICAL, INC.,**

did knowingly and willfully combine, conspire, confederate, and agree with others known and unknown to the Grand Jury, to defraud the United States and to commit certain other offenses against

-4-

the United States, namely:

      a.     with intent to defraud, to devise a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises, and, for the purpose of executing such scheme and artifice, to knowingly transmit and cause to be transmitted, by means of wire communications in interstate and foreign commerce, certain writings, signs, signals, pictures and sounds, in violation of 18 U.S.C. §1343;

      b.     with intent to defraud, to devise a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises, and, for the purpose of executing such scheme and artifice, and attempting to do so, to knowingly cause to be delivered by the United States Postal Service and by commercial interstate carrier, according to the directions thereon, certain matters and things, in violation of 18 U.S.C. § 1341;

      c.     with intent to defraud and mislead, to introduce and deliver for introduction into interstate commerce and cause to be introduced and delivered for introduction into interstate commerce, a drug, as defined by Title 21, United States Code, Section 321(g)(1), that was misbranded as defined by Title 21, United States Code, Sections 352(a), in violation of 21 U.S.C. §§ 331(a) and 333(a)(2);

      d.     with intent to defraud and mislead, to do an act or to cause an act to be done to a drug as defined by 21 U.S.C. § 321(g)(1), namely the dispensing of a prescription drug, as defined by 21 U.S.C. § 353(b)(1), without a valid prescription, while such drug was held for sale after shipment in interstate commerce, which resulted in such drug being misbranded, in violation of 21 U.S.C. §§ 331(k), 353(b)(1) and 333(a)(2).

## OBJECTS OF THE CONSPIRACY

17.     It was the purpose and object of the conspiracy for the defendants to unjustly enrich themselves by (1) distributing the Soft Tabs in interstate commerce through the use of the United States mail and wires using false or misleading labeling and (2) dispensing the Soft Tabs without a valid prescription from a licensed medical practitioner.

## MANNER AND MEANS

The manner and means by which the defendants and others sought to accomplish the objects of the conspiracy and the scheme and artifice to defraud included the following:

18.     Defendant **FELIX ALVAREZ** promoted **VITALITY** as a medical center specializing in the treatment of erectile dysfunction, premature ejaculation, penile curvature, and erection enhancement.

19.     To induce consumers in interstate commerce to purchase the Soft Tabs, defendants **FELIX ALVAREZ** and **VITALITY** caused advertisements (the "Vitality Advertisements") to be created and placed in newspapers and magazines throughout the United States. Customers ordered the Soft Tabs by calling one of the telephone numbers listed on the Vitality Advertisements.

20.     Vitality took orders for the Soft Tabs from more than 50 customers in Florida, Pennsylvania, Kentucky, Illinois, Michigan, Maryland, Indiana, Louisiana, Massachusetts, Ohio, Georgia, and North Carolina.

21.     Vitality charged new customers a physician fee ranging from approximately $25 to $50.

22.     Vitality charged customers approximately $13 to $15 per Soft Tab and required customers to order a minimum of 10 Soft Tabs.

-6-

23.     The Vitality Advertisements contained materially false, misleading, and fraudulent claims about the Soft Tabs, including, but not limited, to the statement that the Soft Tabs were a "new fast acting Viagra," which implied that the Soft Tabs were an FDA approved product like Viagra, when in truth and in fact, the Soft Tabs had not been approved by the FDA.

24.     To induce consumers in interstate commerce to purchase the Soft Tabs, defendant **FELIX ALVAREZ** caused telephone lines, including a toll-free telephone line at 1-888-482-5489, to be established for Vitality employees to accept orders for the Soft Tabs without a valid prescription.

25.     Defendant **FELIX ALVAREZ** hired and instructed non-medically trained employees to answer telephone calls to Vitality from prospective customers throughout the country, conduct interviews fo prospective customers about their medical history, convey information about the Soft Tabs, take orders for the Soft Tabs, and ship the Soft Tabs, without a valid prescription, to customers throughout the country via commercial interstate mail carriers.

26.     Defendants **FELIX ALVAREZ, EDERT ORTIZ,** and **VITALITY** caused the Soft Tabs to be sent to customers without a valid prescription. The prescriptions for the Soft Tabs were not valid because:

a.      the Soft Tabs were prescribed to customers without having a doctor or physician's assistant perform a patient evaluation of the customer;

b.      the Soft Tabs were prescribed to customers without having a doctor or physician's assistant conduct a physical examination of the customer;

c.      the Soft Tabs were prescribed to customers without a doctor or

physician's assistant discussing treatment options and the benefits and risks of treatment with the customer; and

d.    the Soft Tabs were dispensed to some customers before a doctor reviewed the customer's medical information.

27.    Defendant **FELIX ALVAREZ** also caused labeling to be sent with the Soft Tabs to the customers that contained materially false, misleading, and fraudulent claims, as well as omissions of material facts, about the Soft Tabs including, but not limited, to the following:

a.    the labeling stated that the Soft Tabs were the result of a process that took "Pfizer FDA approved Viagra and compounds it into a new form," which implied that the Soft Tabs were FDA approved like Viagra, when in fact, the Soft Tabs were not FDA approved; and

b.    the labeling listed the names of doctors and indicated the doctors had prescribed the drug, when in fact, these doctors had not written a valid prescription for the drug.

28.    Beginning in 2003, defendant **FELIX ALVAREZ** caused two websites to be created and maintained that also constituted labeling under the FDCA. The websites, which could be accessed from any computer in the world with Internet access, were: pleasuretabs.com and 5minutestabs.com (collectively, the "Vitality Websites"). The Vitality Websites promoted the Soft Tabs and allowed customers to order the Soft Tabs through the Vitality Websites.

29.    To induce consumers to purchase the Soft Tabs, defendant **FELIX ALVAREZ**, caused the Vitality Websites to contain materially false, misleading, and fraudulent claims, as well as omissions of material facts, including, but not limited, to the following:

a.    the Vitality Websites referred to the Soft Tabs as "Fast Acting Viagra® Soft Tabs," which created the impression that the Soft Tabs were an FDA-approved product, like Pfizer's Viagra;

b.    the Vitality Websites did not disclose that the Soft Tabs had not been evaluated or approved by the FDA; and

c.    the Vitality Websites stated that a patient would need to have a thorough medical exam to diagnose erectile dysfunction and to find out whether the patient could safely take Soft Tabs, when in fact, the defendants dispensed the Soft Tabs to customers without conducting a thorough physical examination to find out if the customer could safely take Soft Tabs.

30.    Defendants **FELIX ALVAREZ and EDERT ORTIZ** caused customers to believe that the customers' medical history would be reviewed by a licensed medical doctor at Vitality prior to Vitality dispensing the Soft Tabs to the customers. Defendants also caused customers to believe that the customers had been diagnosed with a condition for which the Soft Tabs were prescribed, when in truth and in fact, the customers were not diagnosed with a condition that necessitated the prescribing of the Soft Tabs. In fact, orders were being sent to customers before the customers' medical histories were, in fact, reviewed by a licensed medical doctor.

31.    Customer charts bearing the signatures of Defendants **ANTHONY HASAN, M.D.,** and **DAVID KENTON, M.D.,** do not state or indicate that these defendant doctors had diagnosed the customer with a condition requiring the prescription of the Soft Tabs. In fact, in a number of instances, the Soft Tabs were dispensed to customers before defendants **ANTHONY HASAN,**

**M.D.,** and **DAVID KENTON, M.D.,** had even reviewed the customers' charts.

32.     Defendant **FELIX ALVAREZ** placed orders for **VITALITY** to purchase the Soft Tabs from Signature Pharmacy in Orlando, Florida.

## OVERT ACTS

In furtherance of the conspiracy and to effect the objects thereof, the following overt acts, among others, were committed in Broward County, in the Southern District of Florida, and elsewhere, by at least one co-conspirator:

33.     On or about February 20, 2003, defendant **FELIX ALVAREZ** obtained telephone number 954-689-6666 from BellSouth and a DSL Service Line of 954-689-6600 for Vitality's address at 800 E. Cypress Creek Road, Suite 204, Ft. Lauderdale, FL 33334.

34.     On or about May 19, 2003, defendant **EDERT ORTIZ** represented to an individual with the initials "S.K." that **ORTIZ** was a doctor and signed the questionnaire of S.K.

35.     On or about June 6, 2003, defendant **FELIX ALVAREZ** using the name "Alex Martinez" requested, via facsimile, compounded Sildenafil troches from Prescription Specialities, Cheshire, Connecticut.

36.     On or about December 22, 2003, defendant **FELIX ALVAREZ** signed an Application for Credit on behalf of Vitality with the Charlotte Observer in Charlotte, North Carolina to place ads for Vitality Medical Centers in the Charlotte Observer.

37.     On or about January 16, 2004, defendant **FELIX ALVAREZ** signed a Retail Advertising Agreement with the Charlotte Observer in Charlotte, North Carolina to place advertisements for Vitality Medical Centers in the Charlotte Observer.

38.     On or about January 19, 2004, defendant **ANTHONY HASAN, M.D.,** signed, on

behalf of Vitality, a Standard Application for Retail Advertising with the Greenwich Time in Greenwich, Connecticut, to place advertisements for Vitality Medical Centers in the Greenwich Time.

39.     On or about January 22, 2004, defendant **FELIX ALVAREZ** signed, on behalf of Vitality, a Master Advertising Agreement with the Hartford Courant Company in Hartford, Connecticut, to place advertisements for Vitality Medical Centers in the Hartford Courant.

40.     On or October 8, 2004, defendant **FELIX ALVAREZ** signed a Display Advertising Agreement with the Green Bay Press-Gazette in Green Bay, Wisconsin to place advertisements for Vitality Medical Centers in the Green Bay Press-Gazette.

41.     On or about December 10, 2004, defendant **ANTHONY HASAN, M.D.,** signed a medical questionnaire for the telephonic purchase of Sildenafil Citrate by an individual with the initials "R.K."

42.     On or about December 14, 2004, defendant **EDERT ORTIZ** provided 10 Soft Tabs to an individual with the initials "R.K."

43.     On or about December 27, 2004, defendant **VITALITY** ordered six hundred (600) 50mg Sildenafil Citrate troches at a cost of $470.00 from Signature Pharmacy in Orlando, Florida.

44.     On or about April 15, 2005, defendant **DAVID KENTON, M.D.,** signed a medical questionnaire for the telephonic purchase of Sildenafil Citrate by an individual with the initials "V.G."

45.     On or about October 4, 2005, defendant **FELIX ALVAREZ** prepared a facsimile request to Signature Pharmacy ordering nine hundred (900) 50 milligram Sildenafil Citrate troches at a cost of $700.

All in violation of Title 18, United States Code, Section 371.

## COUNTS 2-3
### (Wire Fraud: 18 U.S.C. §§ 1343 and 2)

46.    Paragraphs 1 through 14 of the General Allegations and paragraphs 15 through 45 of Count 1 are incorporated by reference as though realleged in their entirety herein.

## SCHEME AND ARTIFICE

47.    It was the object of the scheme and artifice to defraud for the defendants **FELIX ALVAREZ and EDERT ORTIZ** to enrich themselves unjustly by introducing into interstate commerce:

(a)    a prescription drug, as defined by 21 U.S.C. § 353(b)(1), by dispensing such drug, to wit, the Soft Tabs, without a valid prescription, while such drug was held for sale after shipment in interstate commerce, by creating the false and fraudulent impression among customers that their medical histories were being reviewed by a licensed physician prior to the Soft Tabs being dispensed and that the customers had been diagnosed with a condition for which the Soft Tabs had been prescribed; and

(b)    a drug, to wit, the Soft Tabs, that was misbranded, because the labeling for the drug created the false and fraudulent impression among customers that the Soft Tabs were approved by the FDA.

## USE OF THE WIRES

48.    On or about the dates listed below, at Broward County, in the Southern District of

-12-

Florida, and elsewhere, the defendants,

**FELIX ALVAREZ,**
**and**
**EDERT ORTIZ,**

did knowingly and willfully devise a scheme and artifice to defraud, and for obtaining money and

property, by means of materially false and fraudulent pretenses, representations, and promises, and,

for the purpose of executing and attempting to execute such scheme and artifice, did knowingly

transmit and cause to be transmitted in interstate commerce by means of wire communications,

certain writings, signs, signals, and sounds, as more specifically described below:

| COUNT | DATE | DEFENDANT | DESCRIPTION OF WIRE COMMUNICATION |
|---|---|---|---|
| 2 | 12/10/04 | **FELIX ALVAREZ and EDERT ORTIZ** | Telephone call from Atlanta, Georgia, to Vitality in Ft. Lauderdale, Florida, in which Vitality took an order for Soft Tabs |
| 3 | 6/28/05 | **FELIX ALVAREZ and EDERT ORTIZ** | Telephone call from New Orleans, Louisiana to Vitality, Ft. Lauderdale, in which Vitality took an order for Soft Tabs |

All in violation of Title 18, United States Code, Sections 1343 and 2.

## COUNTS 4-8

### (Mail Fraud: 18 U.S.C. §§ 1341 and 2)

49.     Paragraphs 1 through 14 of the General Allegations and paragraphs 15 through 45 of

Count 1 are incorporated by reference as though realleged in their entirety herein.

### SCHEME AND ARTIFICE

50.     It was the object of the scheme and artifice to defraud for the defendants to unjustly

enrich themselves by introducing into interstate commerce:

-13-

(a)    a prescription drug, as defined by 21 U.S.C. § 353(b)(1), by dispensing such drug, to wit, the Soft Tabs, without a valid prescription, while such drug was held for sale after shipment in interstate commerce, by creating the false and fraudulent impression among customers that their medical histories were being reviewed by a licensed physician prior to the Soft Tabs being dispensed and that the customers had been diagnosed with a condition for which the Soft Tabs had been prescribed; and

(b)    a drug, to wit, the Soft Tabs, that was misbranded, because the labeling for the drug created the false and fraudulent impression among customers that the Soft Tabs were approved by the FDA.

### USE OF THE MAIL

51.    On or about the dates listed below, at Broward County, in the Southern District of Florida, and elsewhere, the defendants,

**FELIX ALVAREZ**
**and**
**EDERT ORTIZ,**

did knowingly and willfully devise a scheme and artifice to defraud and for obtaining money and property, by means of materially false and fraudulent pretenses, representations, and promises, and, for the purpose of executing and attempting to execute such scheme and artifice, did knowingly cause to be delivered by commercial interstate carrier, according to the directions thereon, certain mail matters and things, as more specifically described below:

| COUNT | DATE | DESCRIPTION OF MAIL MATTER |
|---|---|---|
| 4 | 12/14/04 | One bottle of Soft Tabs sent from Vitality in the Southern District of Florida to "R.K.," in Atlanta, Georgia via DHL Airbill # 3465 900 1311 |
| 5 | 7/1/05 | One bottle of Soft Tabs sent from Vitality in the Southern District of Florida to "R.J." in New Orleans, Louisiana via DHL Airbill # 3462 669 6215 |
| 6 | 8/2/05 | One bottle of Soft Tabs sent from Vitality in the Southern District of Florida to "C.L." in Ft. Lauderdale, Florida via DHL: Airbill # 3462 067 7011 |
| 7 | 9/19/05 | One bottle of Soft Tabs sent from Vitality in the Southern District of Florida to "J.R." in Rockledge, Pennsylvania via DHL: Airbill # 3464 785 3413 |
| 8 | 9/21/05 | One bottle of Soft Tabs sent from Vitality in the Southern District of Florida to "B.T." in Brownsville, Kentucky via DHL: Airbill #3464 784 8815 |

All in violation of Title 18, United States Code, Sections 1341 and 2.

### COUNTS 9-12
### (Misbranding: 21 U.S.C. §§ 331(a); 333(a)(2); 18 U.S.C. § 2)

52.     Paragraphs 1 through 14 of the General Allegations and paragraphs 15 through 45 of Count 1 are incorporated by reference as though realleged in their entirety herein.

53.     On or about the dates listed below, at Broward County, in the Southern District of Florida, and elsewhere, the defendants,

### FELIX ALVAREZ,
### and
### EDERT ORTIZ,

with intent to defraud and mislead, caused the introduction into interstate commerce of a drug, as defined within Title 21, United States Code, Section 321(g), while such drug was misbranded, as defined in Title 21, United States Code, Section 352(a), in that the labeling was false and misleading

-15-

in one or more particulars, as alleged above in paragraphs 27 and 29:

| COUNT | DATE | INTERSTATE COMMERCE TRANSACTION |
|-------|------|----------------------------------|
| 9 | 12/14/04 | Shipment of one bottle of Soft Tabs from the Southern District of Florida to "R.K.," in Atlanta, Georgia |
| 10 | 7/1/05 | Shipment of one bottle of Soft Tabs from the Southern District of Florida to "R.J." in New Orleans, Louisiana |
| 11 | 9/19/05 | Shipment of one bottle of Soft Tabs from the Southern District of Florida to "J.R." in Rockledge, Pennsylvania |
| 12 | 9/21/05 | Shipment of one bottle of Soft Tabs from the Southern District of Florida to "B.T." in Brownsville, Kentucky |

All in violation of Title 21, United States Code, Sections 331(a) and 333(a)(2), and Title 18, United States Code, Section 2.

## COUNTS 13-16
**(Misbranding While Held for Sale: 21 U.S.C. §§ 331(k); 353(b)(1); 333(a)(2); 18 U.S.C. § 2)**

54.     Paragraphs 1 through 14 of the General Allegations and paragraphs 15 through 45 of Count 1 are incorporated by reference as though realleged in their entirety herein.

55.     On or about the dates listed below, at Broward County, in the Southern District of Florida, and elsewhere, the defendants,

**FELIX ALVAREZ**
**and**
**EDERT ORTIZ,**

with intent to defraud and mislead, while prescription drugs were held for sale after shipment in interstate commerce, caused to be dispensed prescription drugs as listed below, contrary to the provisions of 21 U.S.C. § 353(b)(1), in that the prescription drugs were dispensed without the valid prescription of a practitioner licensed by law to administer such drugs, which resulted in the drugs being misbranded, each such instance being a separate Count of this Indictment, in violation of 21

-16-

U.S.C. §§ 331(k) and 333(a)(2), and 18 U.S.C. § 2:

| COUNT | DATE | INTRODUCTION INTO INTERSTATE COMMERCE |
|-------|------|----------------------------------------|
| 13 | 12/10/04 | Shipment of one bottle of Soft Tabs from the Southern District of Florida to "R.K.," in Atlanta, Georgia, without a valid prescription |
| 14 | 7/1/05 | Shipment of one bottle of Soft Tabs from the Southern District of Florida to "R.J." in New Orleans, Louisiana, without a valid prescription |
| 15 | 9/19/05 | Shipment of one bottle of Soft Tabs from the Southern District of Florida to "J.R." in Rockledge, Pennsylvania, without a valid prescription |
| 16 | 9/21/05 | Shipment of one bottle of Soft Tabs from the Southern District of Florida to "B.T." in Brownsville, Kentucky, without a valid prescription |

All in violation of Title 21, United States Code, Sections 331(k), 353(b)(1) and 333(a)(2), and Title 18, United States Code, Section 2.

## FORFEITURE ALLEGATIONS

55.    The allegations of Count 1 are re-alleged and, by this reference, fully incorporated herein for the purpose of alleging forfeitures to the United States of America pursuant to the provisions of Title 18, United States Code, Section 981(a)(1)(C), as incorporated by Title 28, United States Code, Section 2461(c),  and the procedures outlined at Title 21, United States Code Section 853.

56.    Upon conviction of a conspiracy to commit a violation of Title 18, United States Code, Section 1341, pursuant to Title 18, United States Code, Section 371, as alleged in Count 1, the defendants, **FELIX ALVAREZ and VITALITY MEDICAL, INC.,** shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C), as incorporated by Title 28,

United States Code, Section 2461(c), any property, real or personal, which constitutes, or is derived from, proceeds traceable to such violations.

57.     The property subject to forfeiture includes, but is not limited to:

All United States currency or other monetary instruments credited to:

(a)     Approximately $218,676.33 seized from Bank of America account number 0054-8162-9704 in the name of Vitality Medical, Inc.;

(b)     Approximately $714,829.60 seized from Washington Mutual account number 389-376823-1 in the name of Vitality Medical, Inc.;

(c)     Approximately $260,352.95 seized from Wachovia Bank account number 1000362503833 in the name of Zoila Alvarez and Felix M. Alvarez

58.     If the property described above as being subject to forfeiture, as a result of any act or omission of the Defendant,

(1)     cannot be located upon the exercise of due diligence;

(2)     has been transferred or sold to, or deposited with a third person;

(3)     has been placed beyond the jurisdiction of the Court;

(4)     has been substantially diminished in value; or

(5)     has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the above forfeitable property.

All pursuant to Title 18, United States Code, Sections 981(a)(1)(C), Title 28, United States Code, Section 2461, and the procedures of Title 21, United States Code, Section 853.

A TRUE BILL.

JEFFREY H. SLOMAN
ACTING UNITED STATES ATTORNEY

JENNIFER A. KEENE
ASSISTANT UNITED STATES ATTORNEY

NEERAJ D. PAI
SPECIAL ASSISTANT U.S. ATTORNEY

-19-

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA

vs.

FELIX ALVAREZ, et al.,

_____ Defendants. /

CASE NO. _____

## CERTIFICATE OF TRIAL ATTORNEY*

**Superseding Case Information:**

**Court Division:** (Select One)

___ Miami    ___ Key West
_X_ FTL      ___ WPB      ___ FTP

New Defendant(s)          Yes _____  No _____
Number of New Defendants
Total number of counts                    _____

I do hereby certify that:

1.  I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2.  I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. Section 3161.

3.  Interpreter:    (Yes or No)    NO
    List language and/or dialect    _____

4.  This case will take    _7__    days for the parties to try.

5.  Please check appropriate category and type of offense listed below:

    (Check only one)                        (Check only one)

    I    0 to 5 days        _____      Petty      _____
    II   6 to 10 days       __X___      Minor
    III  11 to 20 days      _____      Misdem.
    IV   21 to 60 days      _____      Felony     __X___
    V    61 days and over   _____

6.  Has this case been previously filed in this District Court? (Yes or No)    NO
    If yes:
    Judge: _____    Case No. _____
    (Attach copy of dispositive order)
    Has a complaint been filed in this matter?    (Yes or No)    NO
    If yes:
    Magistrate Case No.
    Related Miscellaneous numbers: _____
    Defendant(s) in federal custody as of _____
    Defendant(s) in state custody as of _____
    Rule 20 from the _____    District of _____

    Is this a potential death penalty case? (Yes or No)    NO

7.  Does this case originate from a matter pending in the Northern Region of the U.S. Attorney's Office prior to October 14, 2003?    _____ Yes    __X__ No

8.  Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to September 1, 2007?    __X__ Yes    _____ No

_____
JENNIFER A. KEENE
ASSISTANT UNITED STATES ATTORNEY
Florida Bar No./Court No.: 0958263

*Penalty Sheet(s) attached                                    REV 4/8/08

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

<u>PENALTY SHEET</u>

**Defendant's Name**: DAVID KENTON, M.D.

**Case No**: _____

Count #: 1

 Conspiracy

 in violation of 18 U.S.C. § 371

**\* Max.Penalty:** Five (5) years' imprisonment; three (3) years' supervised release; $250,000 fine

Count #:

**\*Max. Penalty:**

Count #:

**\*Max. Penalty:**

Count #:

**\*Max. Penalty:**

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### PENALTY SHEET

**Defendant's Name**: VITALITY MEDICAL, INC.

**Case No**: _____

Count #: 1

 Conspiracy

 in violation of 18 U.S.C. § 371

**\* Max.Penalty:** Five (5) years' imprisonment; three (3) years' supervised release; $250,000 fine

Count #:

_____

_____

**\*Max. Penalty:**

Count #:

_____

_____

**\*Max. Penalty:**

Count #:

_____

_____

**\*Max. Penalty:**

**\*Refers only to possible term of incarceration, does not include possible fines, restitution,
special assessments, parole terms, or forfeitures that may be applicable.**

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

<u>PENALTY SHEET</u>

**Defendant's Name**: FELIX ALVAREZ

Case No: _____

Count #: 1

 Conspiracy _____

 in violation of 18 U.S.C. § 371 _____

 **\* Max.Penalty:** Five (5) years' imprisonment; three (3) years' supervised release; $250,000 fine

Counts #:  2-3

 Wire Fraud _____

 in violation of 18 U.S.C. § 1343 and 2 _____

 **\*Max. Penalty:**  Twenty (20) years' imprisonment; three (3) years' supervised release; $250,000 fine

Counts  #: 4-8

 Mail Fraud _____

 in violation of 18 U.S.C. § 1341 and 2 _____

 **\*Max. Penalty:** Twenty (20) years' imprisonment; three (3) years' supervised release; $250,000 fine

Count  #: 9-12

 Misbranding _____

 in violation of 21 U.S.C. § 331(a), 333 (a)(2) and 18 U.S.C. § 2 _____

 **\*Max. Penalty:** Three (3) years' imprisonment; one (1) year supervised release; $10,000 fine

Counts  #:  13-16

 Misbranding While Held for Sale _____

 in violation of 21 U.S.C. § 331(k), 353(b)(1), 333(a)(2) and 18 U.S.C. § 2 _____

 **\*Max. Penalty:**  Three (3) years' imprisonment; one (1) year supervised release; $10,000 fine

\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

<u>PENALTY SHEET</u>

**Defendant's Name**: EDERT ORTIZ

Case No: _____

Count #: 1

 Conspiracy

 in violation of 18 U.S.C. § 371

**\* Max.Penalty:** Five (5) years' imprisonment; three (3) years' supervised release; $250,000 fine

Counts #:  2-3

 Wire Fraud

 in violation of 18 U.S.C. § 1343 and 2

**\*Max. Penalty:**  Twenty (20) years' imprisonment; three (3) years' supervised release; $250,000 fine

Counts  #: 4-8

 Mail Fraud

 in violation of 18 U.S.C. § 1341 and 2

**\*Max. Penalty:** Twenty (20) years' imprisonment; three (3) years' supervised release; $250,000 fine

Count  #: 9-12

 Misbranding

 in violation of 21 U.S.C. § 331(a), 333 (a)(2) and 18 U.S.C. § 2

**\*Max. Penalty:** Three (3) years' imprisonment; one (1) year supervised release; $10,000 fine

Counts  #:  13-16

 Misbranding While Held for Sale

 in violation of 21 U.S.C. § 331(k), 353(b)(1), 333(a)(2) and 18 U.S.C. § 2

**\*Max. Penalty:**  Three (3) years' imprisonment; one (1) year supervised release; $10,000 fine

\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### PENALTY SHEET

**Defendant's Name**: ANTHONY HASAN, M.D.

**Case No**: _____

Count #: 1

Conspiracy

in violation of 18 U.S.C. § 371

**\* Max.Penalty:** Five (5) years' imprisonment; three (3) years' supervised release; $250,000 fine

Count #:

_____

_____

**\*Max. Penalty:**

Count #:

_____

_____

**\*Max. Penalty:**

Count #:

_____

_____

**\*Max. Penalty:**

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**