UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 09-60344-CR-MARRA

UNITED STATES OF AMERICA,

     Plaintiff,

vs.

ANTHONY HASAN, et als,

     Defendant.

_____/

## SENTENCING MEMORANDUM

The Defendant, ANTHONY HASAN , by and through the undersigned counsel,

files this Sentencing Memorandum and states unto the Court as follows:

### A SENTENCE OF PROBATION WITH HOME

### CONFINEMENT IS REASONABLE

It has been five years since the Supreme court released the district courts from the

mandatory Sentencing Guidelines in *United States v. Booker,* 543 U.S. 220 (2005). And

in the wake of *Booker*, it is essential that district courts make an "individualized

assessment based on the facts presented." *Gall v. United States*, 552 U.S. 38, 50 (2007).

The Supreme Court further emphasized that this Court "is in a superior position to find

facts and judge their import under § 3553 (a) in the individual case... This means that

[t]he sentencing judge has access to, and greater familiarity with the individual case and

-1-

U.S.A. vs. Anthony Hasan, et als,
Case No.: 09-60344-CR-MARRA
Sentencing Memorandum

the individual defendant before him than the [Sentencing] Commission or the appeals

court." *Id.* (quoting *Rita v. United States,* 551 U.S. 338, 357-58 (2007).)

     Judge Barkett of the United States Court of Appeals for the Eleventh Circuit

recently explained the importance of not deferring to the Guideline in imposing a

sentence. *See United States v. Docamp, Jr.* 573 F.3d 1091, 1105 (11th Cir.

2009)(concurring in part and dissenting in part). Judge Barkett addressed the conflict in

the Supreme Court's post-*Booker* decisions that the district court start the imposition of a

sentence with a calculation of the Guidelines, while permitting the district courts to "tailor

the sentence in light of other statutory concerns" and reaffirming that the district courts

may not presume that the Guidelines range is reasonable. Judge Barkett explained:

> There is, of course, a wide range between a "starting point warranting
> respectful consideration" and "no presumption of reasonableness."
> Some of Supreme Court Justices have expressed serious concern
> about how to apply the Guidelines given the latent ambiguity in their
> advisory nature. "[I]f sentencing judges attributed substantial
> gravitational pull to the now-discretionary Guidelines, if the treated
> the Guidelines result as persuasive or presumptively appropriate, the
> Booker remedy would in practical terms preserve the very feature of
> the Guidelines that threatened to trivialize the jury right." Rita, 551 U.S.
> at 390, 127 S.Ct. 2456 (Souter, J., dissenting); see also Id. at 366, 127
> S.Ct. 2456 (Stevens, J., concurring)("I am not blind to the fact that,
> as a practical matter, many federal judges continued to treat the
> Guidelines as virtually mandatory after our decision in Book.")

U.S.A. vs. Anthony Hasan, et als,
Case No.: 09-60344-CR-MARRA
Sentencing Memorandum

Judge Barkett further explained how the Guidelines inevitably have a considerable

"anchoring" effect on a district court's analysis:

> Anchoring is a strategy to simplify complex tasks, in which numeric
> judgments are assimilated to a previously considered standard.
> When asked to make a judgment, decision-makers take an initial
> starting value (i.e. the anchor) and then adjust it up or down. Studies
> underscore the significance of that initial anchor; judgments tend to
> be strongly biased in its direction.

*Id.* at n. 5.

Finally, Judge Barkett explained that sentencing judges must "make a concerted

effort to reach *independent conclusions* about the appropriateness of a sentence in each

specific case." *Id.* (emphasis in original).

As the Court is well aware, the factors provided in 18 U.S.C. § 3553(a) are

intended to guide the sentencing judge in determining a reasonable sentence. Those

factors include the history and characteristics of the Defendant, the nature, circumstances

and seriousness of the offense and the need for deterrence and rehabilitation. The

Defendant argues below that a balancing of theses factors warrants a sentence of

probation with home confinement.

## I. THE SERIOUSNESS OF THE OFFENSE (18 U.S.C § 3553(a)(2))

The Defendant would begin by discussing the seriousness of the offense. The

Defendant does not discount the seriousness of his conduct and his involvement with

U.S.A. vs. Anthony Hasan, et als,
Case No.: 09-60344-CR-MARRA
Sentencing Memorandum

Vitality and Felix Alvarez. It should be recognized that the Defendant, although titled as

"Medical Director," did nothing more than review the medical questionnaires prepared by

Vitality's staff. The Defendant did not set up the office, decide what medications would

be sold or prescribed, prepare or approve advertising, purchase the medications or label,

package and ship the prescribed medications.

## II. THE NATURE AND CIRCUMSTANCES OF THE OFFENSE (18 U.S.C § 3353(a)(1))

As reflected in a character letter written by Hector Trujillo, M.D., and submitted to

this Court on November 16, 2010, the Defendant on more than one occasion advised

Felix Alvarez of his intention to terminate his employment with Vitality, only to be

begged and persuaded to remain. It should be noted that while the PreSentence

Investigation Report states that the Defendant is responsible for a loss of $1,078,816.00,

the Government has seized from the bank accounts of Felix Alvarez and Vitality in excess

of one million ($1,000,000.00) dollars, and is seeking forfeiture of same.

## III. THE NEED TO AFFORD ADEQUATE DETERRENCE TO CRIMINAL CONDUCT (18 U.S.C. § 3553(a)(2)(B))

At the outset, Judge Rakoff's noteworthy decision in *United States v. Adelman*,

441 F.Supp.2d, 506, 514 (S.D.N.Y. 2006) sets the tone for the analysis that follows in this

case:

U.S.A. vs. Anthony Hasan, et als,
Case No.: 09-60344-CR-MARRA
Sentencing Memorandum

> [T]here is considerable evidence that even relatively short sentences
> Can have a strong deterrent effect on prospective "white collar"
> offenders. *See, e.g.,* Richard Frase, *Punishment Purpose,* 58 Stanford
> L. Rev. 67, 80 (2005); Elizabeth Szcokyj, *Imprisoning White Collar
> Criminals? 23 S.* Ill. U. *L.J.* 485, 492 (1998)

### A. Specific Deterrence

If the Court imposes a sentence of probation with a special condition of home

confinement (As imposed on Co-Defendant David Kenton on November 12, 2010), the

Defendant will be subject to monitoring by the Court. Additionally Dr. Hasan's life

history and characteristics strongly indicate a highly unlikely risk of future criminality.

### B. General Deterrence

"Deterrence theory implies a psychological process whereby individuals are

deterred from committing criminal acts only if they perceive legal sanctions as certain,

swift, and/or severe." Kirk R. Williams, *Perceptual Research on General Deterrence*: *A*

*Critical Review*, 20 LAW & SOC'Y REV. 545 (1986).

The Commission's proposed Amendments (75 FR 3525-01, 2010 WL 182798

(Jan. 21, 2010); http://www.ussc.gov/2010guid/finalamend10.pdf (Apr. 30, 2010)) reflect

a trend - through its modification of Sentencing Zones "conforming to *Booker*, as

demonstrated by lifting the Guidelines-imposed limitations on offense characteristics that

were previously "not ordinarily relevant".

U.S.A. vs. Anthony Hasan, et als,
Case No.: 09-60344-CR-MARRA
Sentencing Memorandum

  The Sentencing Commission recently noted:

> Offenders convicted of fraud and other white collar offense,
> while still primarily sentenced to prison, also more often
> are sentence to alternatives; approximately one-third of fraud
> and white collar offenders are sentenced to prison alternatives.

  USSC, Alternative Sentencing in the Federal Criminal Justice System (January 2009).

  The recidivism rate, and therefore the measured threat to society sought to be addressed by both the general and specific deterrence are lower than other categories of offenders.

  "The theory behind the current system does not ensure deterrence– The current system of sentencing has led to a growing number of departures from the Guidelines." Note, *Go Directly to Jail: White Collar Sentencing After the Sarbanes-Oxley Act*, 122 HARV. L. REV. 1728, 1732 (2009)(citing recent USSC data analysis).

  The Defendant submits that a sentence of probation with home confinement is warranted in this case, based on all of the circumstances unique to him, and that the guideline range of any period of imprisonment is clearly "greater than necessary" to accomplish the goals of sentencing. These circumstances include "but are not limited to" a minor role in the crime charged, an absence of criminal history, a low recidivism rate and, that a reasonable period of probation will serve the interests of general deterrence.

U.S.A. vs. Anthony Hasan, et als,
Case No.: 09-60344-CR-MARRA
Sentencing Memorandum

## IV. THE NEED TO PROTECT THE PUBLIC FROM OTHER CRIMES OF THE DEFENDANT, "§ 3553(A)(2)(C)–"INCAPACITATION")

Incapacitation is a corollary to the issue of how much weight should be granted for the need "to protect the public from other crimes of the Defendant" in FRAUD cases.

The Defendant is a forty six year old man, who in all likelihood will have his medical license suspended or revoked. This will significantly affect his ability to support his pregnant wife and continue child support payments for his minor child. The Defendant clearly faces an uncertain employment future in any field especially since he will now be a convicted felon.

In *Padilla v. Kentucky*, 130 S.Ct. 1473, 1488 (2010), the Court recently underscored the collateral consequences of a conviction: "[C]riminal convictions can carry a wide variety of consequences other than conviction and sentencing, including ....loss of business or professional licenses."

To the extent that incapacitation or specific deterrence is concerned, the Defendant may no longer hold a medical license so re-offending in a similar manner is impossible. Punishment for Dr. Hasan, which in all likelihood is going to result in the loss of his medical license, causes a wrenching personal and social shame, a form of punishment not shared by most other defendants.

U.S.A. vs. Anthony Hasan, et als,
Case No.: 09-60344-CR-MARRA
Sentencing Memorandum

> Another reason to think white-collar criminals
> should serve shorter sentences than terrorists
> and violent criminals is differences in recidivism:
> because white-collar criminals forfeit their positions
> of power, experience regulatory restrictions, and
> suffer community shame, they are unlikely to
> repeat offenders.

Ellen S. Podgor, *Throwing Away the Key*, 116 YALE L.J. Pocket Part 279, 284 (2007)(emphasis added).

## V. THE HISTORY AND CHARACTERISTICS OF THE DEFENDANT

A judicial-determination of "just" punishment must of necessity involve careful inquiry into the life history and character of the person who is to be sentenced. See, 18 U.S.C. 3553(a)(1)(Court "shall consider ...  the history and characteristics of the defendant").

By any standard, the Defendant has led a truly exemplary life outside of the commission of the present offense. Viewed through any lens, Defendant "history and characteristics" point convincingly to the fact that a sentence of imprisonment would constitute punishment "greater than necessary" to accomplish the goals of sentencing and would therefore be excessive under § 3553(a).

The sub-sections that follow attempt to discuss several significant aspects of the Defendant's history and characteristics that - taken individually and in combination -

U.S.A. vs. Anthony Hasan, et als,
Case No.: 09-60344-CR-MARRA
Sentencing Memorandum

strongly support a downward variance to a sentence of probation with home confinement.

**A. No prior Criminal History**

First, Defendant has never been in trouble with the law, either as a juvenile or

adult. A defendant's criminal history is informative to his/her general character and also

serves as a predictive indicator of the likelihood or recidivism. "[A] district court may

weigh a defendant's lack of criminal history, even when the defendant has been placed in

a criminal history category of I, in its §3553(a) analysis." United States v. Huckins, 529

F.3d 1312, 1318 (10th Cir. 2008). See also, United States v. Jarvi, 537 F.3d 1256, 1263

(10th Cir. 2008)("We have now held that district courts have broad discretion to consider

individual characteristics like.... criminal history in fashioning an appropriate sentence

under 18 U.S.C § 3553(a), even when disfavored under the Guidelines or already

accounted for in another part of the calculation."), United States v. Montgomery, 165 Fed.

Appx. 840, 843, 2006 WL284205, 2(11th Cir. 2006)(unpublished decision)(Eleventh

Circuit, in affirming significant downward variance as reasonable, noted that "this crime

was Montgomery's first and only offense").

**B. Protection of the public is assured**

The Court may also consider the Defendant's total lack of criminal history as

relevant to the risk of recidivism and the corresponding need to protect the public. *See,*

-9-

U.S.A. vs. Anthony Hasan, et als,
Case No.: 09-60344-CR-MARRA
Sentencing Memorandum

*e.g.* *United States v. Roque*, 536 F.Supp.2d 987, 990 (E.D.Wis. 2008)("defendant's minimal prior record and the positive changes he hand made in his life" justified finding that he "did not present a threat to the public"). Given his lack of prior criminal history and his character, the Defendant has an excellent chance of rehabilitation and his risk of recidivism is extremely low.

In sum, like the Defendant in *Montgomery, supra*, "[b]ased on [his] lack of a criminal history, [Defendant] is unlikely to commit further crimes in the future such that [he] would need a lengthily period of incarceration to protect the public."

### C. Educational Achievements

The Defendant was born in California and moved to Belle Glade, Florida at the age of eleven (11) with his parents. At the age of seventeen (17) he moved to Gainesville, Florida to attend college at the University of Florida and then attended medical school in the Dominican Republic.

### D. Employment

The Defendant earned his medical degree in the Dominican Republic in 1990 and then returned to the United States to study for the medical boards. After passing the boards, he did general surgeon residency at Harlem Hospital in New York and at Mt. Sinai in Miami, Florida. The Defendant was issued a medical license in 1999 by the

U.S.A. vs. Anthony Hasan, et als,
Case No.: 09-60344-CR-MARRA
Sentencing Memorandum

Florida Department of Health and is board certified in the areas of skin surgery, skin reconstruction and skin cancer surgery.

As the Defendant stated in his acceptance of responsibility statement, "from the time he was a child all he wanted to be was a medical doctor so that he could help people cure their illnesses and medical conditions. The loss of his ability to continue to do so is emotionally devastating to him.

### E. Mental and Emotional Health

Defendant notes that 18 U.S.C. § 3553(a)(2)(D) requires that a sentence "provide the Defendant needed....medical care...in the most effective manner." The Defendant submits that upon becoming a convicted felon, losing his medical license and suffering all else that comes along with the stigma's of both, he will need mental health counseling to deal with same. A probationary sentence will enable the Defendant to best obtain any necessary counseling.

### VI. CONCLUSION

A below-the-guideline sentence is clearly warranted in this case for the reasons correlated with the statutory sentencing factors, the most prominent of which is related to assessing the nature and characteristics of the Defendant, the nature, circumstances and seriousness of the offense, deterrence, recidivism, incapacitation, and the need for

U.S.A. vs. Anthony Hasan, et als,
Case No.: 09-60344-CR-MARRA
Sentencing Memorandum

effective medical care.

The mitigating theme predominant in this motion for variance is the Defendant's

amenability to compliant deterrence and improbable recidivism based upon the nature and

circumstances of the offense and his own personal history and characteristics. The

Defendant has recognized the wrongfulness of his conduct has vowed to redeem and

rehabilitate himself. A probation sentence followed by home confinement will adequately

punish him, but not greater than necessary to meet the statutory goals of section 3553(a).

Protection of the public, the sentencing factor codified at 18 U.S.C. §3553(a)(2)©,

is particularly relevant as the Defendant does not present a risk to the community. To the

contrary, he is prepared to integrate into its mainstream notwithstanding the formidable

socio-economic barriers he must overcome as a collateral consequence of this conviction.

Finally, as stated in *United States v. Norton* 218 F.Supp.2d 1014, ,1020

(E.D.Wis.2002):

> If the nature of the offense and the character of the
> defendant tend to show that no end other than
> punishment will be served by imprisonment, if there
> is no threat to the community, and if society will
> ultimately benefit by allowing the defendant to care
> for his or her family, a departure is warranted.  It is
> difficult to imagine a clearer example of an individual
> who poses no future "threat to the community", and
> where "society will ultimately benefit by allowing
> [him] to care for his family."

-12-

U.S.A. vs. Anthony Hasan, et als,
Case No.: 09-60344-CR-MARRA
Sentencing Memorandum

The Defendant submits that he and Dr. Kenton are both similarly situated and that a similar sentence to that imposed on Dr. Kenton should be imposed on him. The defendant thus respectfully submits that he poses no "future threat to the community" and that society will ultimately benefit by allowing him to care for himself and his family. As a result, a variance to a sentence of probation with home confinement is respectfully requested.

I HEREBY CERTIFY that on this 22 day of November, 2010 I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notice of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

KEITH B. SELTZER, ESQ.
Attorney for Defendant
Florida Bar No: 457876
Kseltzerlaw@aol.com
110 SE 6th Street, Ste. 1900
Fort Lauderdale, FL 33301
(954) 766-8884

-13-

U.S.A. vs. Anthony Hasan, et als,
Case No.: 09-60344-CR-MARRA
Sentencing Memorandum

## SERVICE LIST

### U.S.A. vs. Hasan, et als
### Case No.: 09-60344-CR-MARRA
### United States District Court, Southern District of Florida

**Jennifer Keene**
Jennifer.Keene@usdoj.gov
**United States Attorney's Office**

**Michael A. Gottlieb**
mike@mgottlieblaw.com

**James Eisenberg**
BIGJIMLAW@aol.com

-14-